**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD D. MANTEAU, | ) | No. ED CV 12-1153-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 11, 2012, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on August 9, 2012.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 21, 2013, that addresses their positions concerning the disputed issue in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

## II.

## BACKGROUND

Plaintiff was born on April 13, 1970. [Administrative Record ("AR") at 56.] He has a college education [AR at 39] and past relevant work experience as a laborer and an aircraft mechanic. [AR at 123.]

On June 9, 2010, plaintiff filed his application for Disability Insurance Benefits, alleging that he has been unable to work since May 24, 2008,[1] due to cervical spine degenerative disc disease, right upper extremity radiculopathy, low back strain, ganglion cyst in the right wrist, residual fracture in the left thumb, patellofemoral syndrome in both knees, plantar fasciitis in both feet, tinnitus, and migraines. [AR at 29, 56-61, 116-19.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 58-70.] A hearing was held on June 13, 2011, at which time plaintiff appeared with counsel and testified on his own behalf. A vocational expert also testified. [AR at 25-55.] On June 17, 2011, the ALJ determined that plaintiff was not disabled. [AR at 15-21.] On April 27, 2012, the Appeals Council denied plaintiff's request for review. [AR at 1-5.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] Plaintiff's application reflects an alleged disability onset date of March 11, 2003 [AR at 116], but at the administrative hearing, his attorney amended the alleged onset date to May 24, 2008. [AR at 29.]

2

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity during the period from his alleged disability onset date of May 24, 2008, through his date last insured of December 31, 2008. [AR at 17.] At step two, the ALJ concluded that through plaintiff's date last insured, "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment." [Id.] Accordingly, the ALJ determined that plaintiff was not under a disability at any time from May 24, 2008, through December 31, 2008. [AR at 20.]

**V.**

**THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred in finding that plaintiff did not have a severe impairment prior to his date last insured of December 31, 2008. [Joint Stipulation ("JS") at 4-10, 14.]

At step two of the five-step process, a claimant must provide evidence of a physical or mental impairment "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. § 404.1508. The Commissioner's regulations define "symptoms" as a claimant's own description of his physical or mental impairment. 20 C.F.R. § 404.1528. "Signs," by contrast, "are anatomical, physiological,

4

1  or psychological abnormalities which can be observed, apart from [the claimant's] statements ...[,]

2  [and] must be shown by medically acceptable clinical diagnostic techniques." Id. Finally,

3  "[l]aboratory findings are anatomical, physiological, or psychological phenomena which can be

4  shown by the use of medically acceptable laboratory diagnostic techniques." Id. A claimant's

5  statements about an impairment (i.e., "symptoms") "are not enough [by themselves] to establish

6  that there is a physical or mental impairment." Id.

7      A "severe" impairment, or combination of impairments, is defined as one that significantly

8  limits physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520. An impairment

9  or combination of impairments should be found to be "non-severe" only when the evidence

10  establishes merely a slight abnormality that has no more than a minimal effect on an individual's

11  physical or mental ability to do basic work activities. See Corrao v. Shalala, 20 F.3d 943, 949

12  (9th Cir. 1994) (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R.

13  § 404.1521(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs,

14  including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching,

15  carrying, or handling ... ." 20 C.F.R. § 404.1521(b).

16      Here, the ALJ did not reach the issue of whether plaintiff had a "severe" impairment

17  because he found that through the date last insured, "there were no medical signs or laboratory

18  findings to substantiate the existence of a medically determinable impairment." [AR at 17.] From

19  his decision, it appears that the ALJ gave three reasons for this conclusion: (1) "[t]here are minimal

20  medical treatment records close in time from the amended alleged date of onset through the date

21  last insured," and therefore "there was a lack of objective evidence to substantiate the existence

22  of a medically determinable impairment"; (2) three non-examining state agency physicians "opined

23  that there is insufficient evidence of any medically determinable impairment prior to the date last

24  insured"; and (3) despite several Department of Veterans Affairs documents reflecting that it has

25  found plaintiff disabled, there were reasons to assign "less weight" to these VA determinations.

26  [AR at 19-20.] None of these reasons is legally sufficient to support the ALJ's conclusion,

27  however.

28

1    First, the ALJ improperly rejected evidence of problems with plaintiff's cervical spine, right

2    upper extremity, and right knee on the basis that the evidence either pre-dated plaintiff's alleged

3    disability onset date or post-dated his date last insured.  While evidence pre-dating a claimant's

4    alleged onset date may be of limited relevance in determining whether that claimant is disabled

5    after his alleged onset date (see Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1165 (9th

6    Cir. 2008) (citation omitted) ("Medical opinions that predate the alleged onset of disability are of

7    limited relevance.")), such evidence is not automatically irrelevant to determining disability during

8    the period at issue.  See, e.g., Hamlin v. Barnhart, 365 F.3d 1208, 1211, 1223 n.15 (10th Cir.

9    2004) (one physician's finding that the plaintiff had a diminished left triceps reflex and somewhat

10   diminished grip bilaterally more than five years before the alleged onset date, and another

11   physician's finding that the plaintiff had bilateral muscle strength and grasp strength loss 16

12   months before the alleged onset date, were relevant to whether the plaintiff was disabled as a

13   result of the loss of use of his arms as of his alleged onset date); DeBoard v. Comm'r of Social

14   Sec., 211 Fed. Appx. 411, 414 (6th Cir. 2006) (citable for its persuasive value pursuant to Sixth

15   Circuit Rule 28(g)) (evidence predating the onset of disability, when evaluated in combination with

16   later evidence, may help establish disability, particularly when the allegedly disabling condition is

17   progressive); Lackey v. Barnhart, 127 Fed. Appx. 455, 458 (10th Cir. 2005) (citable for its

18   persuasive value pursuant to Tenth Circuit Rule 32.1(A)) (ALJ should not ignore medical reports

19   simply because they predate the alleged onset of disability).  Similarly, evidence that post-dates

20   a claimant's date last insured may be probative of whether a claimant had any impairments prior

21   to his date last insured.  See, e.g., Turner v. Comm'r of Social Security, 613 F.3d 1217, 1228-29

22   (9th Cir. 2010) ("[w]hile the ALJ must consider only impairments (and limitations and restrictions

23   therefrom) that [the claimant] had prior to the DLI, evidence post-dating the DLI is probative of [the

24   claimant's] pre-DLI disability"); Lester, 81 F.3d at 832 (citation omitted) ("medical evaluations made

25   after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration

26   condition").

27   Here, with respect to plaintiff's cervical spine (or neck) problems, the ALJ found that the

28   "medical evidence records reveal only remote mild objective evidence prior to the alleged onset

6

date and no objective evidence during the period at issue to support his allegations."  Specifically, the ALJ stated that "[t]here is objective evidence of minimal changes in the cervical spine prior to the alleged onset date; however, the evidence was too remote and not probative with regard to [plaintiff's] condition for the period at issue."  The ALJ continued: "Further, as of November [26], 2007,[2] [plaintiff's] cervical spine range of motion was essentially normal with some pain at extremes, his strength was normal, and he reported he was currently looking for a job after just having finished business school."  [AR at 19 (citations omitted) (footnote added).]  The ALJ therefore concluded that despite plaintiff's allegations of neck pain, "[t]here were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured."  [Id.]

The Court finds that substantial evidence does not support the ALJ's conclusion that the evidence of plaintiff's cervical spine problems "was too remote and not probative with regard to [plaintiff's] condition for the period at issue."  About 15 months prior to his alleged disability onset date -- on February 16, 2007 -- an MRI of plaintiff's cervical spine revealed "[m]ild central canal narrowing due to a central disc protrusion" at C4-C5, and the following findings at C5-C6: "[m]ild central canal narrowing secondary to disc bulge/osteophyte complex"; "[m]ild right neural foraminal stenosis"; and "[m]inimal spinal cord compression cannot be excluded."  [AR at 294-97.]  On August 15, 2007, another MRI of plaintiff's cervical spine reflected "3mm buckling of posterior longitudinal ligament and moderate narrowing [of] left neural foramen" at C4-C5, and "3mm osteophyte disc with moderate narrowing [of] spinal canal [] and minimal narrowing [of] bilateral neural foramen" at C5-C6.  [AR at 292-94.]  Plaintiff received nerve block injections to his cervical and/or lumbar spine on August 15, 2007, August 22, 2007, and August 29, 2007.[3]  [AR at 286-90.]  Several months later -- on November 26, 2007 -- an x-ray of plaintiff's cervical spine revealed "mild

---

[2]   The ALJ assigned a date of November 30, 2007, to a November 26, 2007, treating note.  That treating note was "approved" on November 30, 2007.  [See AR at 19, 188.]

[3]   While the August 22, 2007, and August 29, 2007, records state that injections were administered to plaintiff's "cervicothoracic region" and "lower cervical spine" region, respectively [AR at 286-88], the August 15, 2007, record states: "Nerve block lumbar or sacral or cervical or SI joint."  [AR at 290.]

1    degenerative changes at the C5-6 level." [AR at 189, 284-85.]  A treating note from the same day
2    -- which the ALJ referenced in his decision -- stated that upon examination of plaintiff's neck, there
3    was "pain at the extremes" upon flexion, extension, axial rotation, and lateral bending; he had
4    "some midline tenderness to palpation"; and he "ha[d] pronounced pain with axial loading of his
5    neck." [AR at 188-89.]  The treating physician diagnosed plaintiff with "[m]ild degenerative disc
6    disease at C4-5 and C5-6 with radiculopathy." [AR at 189.]  After plaintiff's date last insured of
7    December 31, 2008, an x-ray of plaintiff's cervical spine -- taken on September 18, 2009 -- found
8    "moderate narrowing of the space C5-6" and the x-ray report reflected an impression of
9    degenerative disc disease at C5-C6. [AR at 280.]  On October 28, 2009, an MRI of plaintiff's
10   cervical spine showed the following at C5-C6: "[m]ild to moderate degenerative change with
11   narrowing of disc space"; "[s]evere narrowing of right neuroforamen"; "[m]oderate narrowing of left
12   neuroforamen"; "4mm disc osteophyte complex"; and "[m]ild to moderate spinal stenosis with
13   flattening of spinal cord." [AR at 245-46.]  Thereafter, an August 5, 2010, treating note reported
14   that plaintiff's "right neck muscle area [was] tight on exam" [AR at 191], and a December 8, 2010,
15   treating note reported that plaintiff had "decreased end [range of motion] with flexion, extension,
16   lateral rotation with some discomfort with extension and lateral rotation," and "[d]ecreased
17   sensation (less than 50% light touch) in right C6 dermatome." [AR at 324-25.]  The evidence of
18   degenerative disc disease of plaintiff's cervical spine from both before *and* after the period at
19   issue, and indications that plaintiff's cervical spine problems worsened over time (compare, e.g.,
20   "3mm osteophyte disc" and "minimal narrowing [of] bilateral neural foramen" at C5-C6 on August
21   15, 2007 [AR at 294], with "4mm disc osteophyte complex," "[s]evere narrowing of right
22   neuroforamen," and "[m]oderate narrowing of left neuroforamen" at C5-C6 on October 28, 2009
23   [AR at 246]), are probative of plaintiff's assertion that he had a cervical spine impairment *during*
24   the relevant period.  The ALJ did not consider this objective evidence of plaintiff's cervical spine
25   problems in determining whether there were any "medical signs or laboratory findings to
26   substantiate the existence of a medically determinable impairment through the date last insured,"
27   and he improperly dismissed this evidence by stating that it "was too remote and not probative with

28

1   regard to [plaintiff's] condition for the period at issue."[4]   See Hamlin, 365 F.3d at 1223 n.15;

2   DeBoard, 211 Fed. Appx. at 414; see also Turner, 613 F.3d at 1228-29.

3   　　　　The Court further notes that in concluding that "[t]here were no medical signs or laboratory

4   findings to substantiate the existence of a medically determinable impairment through the date last

5   insured," the sole medical record the ALJ relied on was a treating note dated November 26, 2007

6   (which itself is technically outside the period at issue).  The ALJ's reliance on that single record

7   to support his conclusion was improper, as was his selective reliance on only certain evidence *in*

8   that record.  The ALJ noted that the November 26, 2007, record reflected that "[plaintiff's] cervical

9   spine range of motion was essentially normal with some pain at extremes, his strength was

10   normal, and he reported he was currently looking for a job after just having finished business

11   school."  [AR at 19 (citing AR at 188-89).]  However, as noted supra, the November 26, 2007,

12   treating note not only found that plaintiff had "pain at the extremes" of flexion, extension, axial

13   rotation, and lateral bending of his neck, but also that he had "some midline tenderness to

14   palpation" and "pronounced pain with axial loading of his neck."  Further, the physician noted that

15   x-rays of plaintiff's cervical spine he ordered taken on that date showed "mild degenerative

16   changes at the C5-6 level," and he diagnosed plaintiff with "[m]ild degenerative disc disease at C4-

17   5 and C5-6 with radiculopathy."  [AR at 188-89.]  An ALJ must consider all of the relevant evidence

18   in the record and may not point to only those portions of the records that bolster his findings.  See

19   Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (it is impermissible for the ALJ to develop

20   an evidentiary basis by "not fully accounting for the context of materials or all parts of the

21   testimony and reports"); see also Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error

22   for an ALJ to ignore or misstate the competent evidence in the record in order to justify her

23

24   　　　4　　The ALJ in his decision acknowledged the relevance of evidence pre-dating plaintiff's
alleged onset date and post-dating the date last insured when he stated: "There are minimal
25   medical treatment records close in time from the amended alleged date of onset through the date
last insured.  However, for medical history purposes, the undersigned has read, reviewed and
26   considered all medical evidence prior to the amended alleged onset date and after the date last
insured submitted by [plaintiff]."  [AR at 19.]  Despite this statement by the ALJ, his decision does
27   not reflect that he gave adequate consideration to "*all* [of the] medical evidence prior to the
amended alleged onset date and after the date last insured."  [Id. (emphasis added).]
28

9

conclusion).  Further, while the fact that plaintiff was looking for a job in November 2007 may be probative of whether he was *disabled* as of a certain time, it is not evidence that "[t]here were no *medical signs* or *laboratory findings* to substantiate the existence of a medically determinable impairment through the date last insured."  [AR at 19 (emphases added).]

Similarly, the ALJ's determination that plaintiff had no medically determinable impairment due to right upper extremity radiculopathy prior to his date last insured also selectively relies on the evidence in the records the ALJ cited, and ignores medical records reflecting signs and laboratory findings from before plaintiff's alleged onset date of May 24, 2008, and after his date last insured of December 31, 2008.  Specifically, the ALJ found that plaintiff had no medically determinable impairment related to his right upper extremity prior to December 31, 2008, because an October 13, 2008, exam note stated that a test of plaintiff's right hand "revealed negative Tinel's and negative Phalen's signs," and a November 13, 2008, electromyography of plaintiff's right upper extremity "did not reveal any electrical evidence of an active or ongoing neurogenic process."  [AR at 19 (citing AR at 611-12, 694).]  However, the November 13, 2008, electromyography report also stated that the test "revealed evidence of a chronic/old C6-7 radiculopathy."  [AR at 694.]  Further, the ALJ did not mention the following evidence tending to establish that plaintiff had a right upper extremity impairment: the November 26, 2007, treating note that the ALJ relied on elsewhere in his decision (as discussed <u>supra</u>) stated that upon examination, plaintiff had "decreased sensation over the right thumb, index finger and long finger to 5.07 monofilament," and reflected a diagnosis of "[m]ild degenerative disc disease at C4-5 and C5-6 with radiculopathy" [AR at 188-89]; a February 4, 2010, treating note diagnosed plaintiff with "cervical disc disease with stenosis [C]5[-]6" and "intermittent radicular symptoms" [AR at 225-26]; and a December 8, 2010, treating note stated that plaintiff had "[d]ecreased sensation (less than 50% light touch) in right C6 dermatome" and reflected a "[positive] Spurling's on right."  [AR at 324-25.]

Further, with respect to plaintiff's alleged right knee patellofemoral syndrome -- which the ALJ did not specifically address -- a November 29, 2006, x-ray of plaintiff's right knee revealed "suprapatellar joint effusion without identifiable fracture or subluxation," which was characterized

on the x-ray report as "abnormal[]"; and a December 18, 2006, MRI of the right knee revealed "bone marrow contusive changes along the lateral femoral condyle with minimal cortical irregularity along the anterior aspect, which may represent subtle fracture[,] [m]inimal degenerative change of the medial and lateral compartment[, and] [s]mall joint effusion."  [AR at 298-300.]

An ALJ must explain why "significant, probative evidence has been rejected."  See Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (citation omitted).  The ALJ's first reason for concluding that "[t]here were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured" was improper, as the ALJ reached this conclusion by selectively relying on the evidence (see Reddick, 157 F.3d at 722-23), and also failed to give any proper reason to reject significant, probative evidence.  See Hamlin, 365 F.3d at 1223 n.15; DeBoard, 211 Fed. Appx. at 414; see also Turner, 613 F.3d at 1228-29.

The ALJ's second reason for concluding that plaintiff did not have a medically determinable impairment prior to his date last insured was that three state agency non-examining physicians "opined that there is insufficient evidence of any medically determinable impairment prior to the date last insured."[5]  [AR at 20 (citing AR at 252-53, 696-709).]  However, given that these physicians also relied on the "insufficien[cy]" of plaintiff's medical records from May 24, 2008, to December 31, 2008, to render their opinions, neither do their opinions constitute a proper reason to conclude that plaintiff had no medically determinable impairment prior to his date last insured.

Third, the ALJ concluded that plaintiff had no medically determinable impairment through December 31, 2008, because although an ALJ must ordinarily give great weight to a Department of Veterans Affairs ("VA") determination of disability (McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)), there were "persuasive, specific, and valid reasons" for assigning less weight to the VA's 2003 and 2009 rating decisions finding that plaintiff was completely disabled as of March

_____

[5]   On September 7, 2010, a non-examining physician reviewed plaintiff's 2010 medical records and concluded: "appears insufficient evidence." [AR at 252-53.] On January 5, 2011, a non-examining psychiatrist reviewed plaintiff's medical records and concluded that they contained insufficient evidence of a medically determinable impairment. [AR at 696-706, 710-12.] Finally, also on January 5, 2011, a different non-examining physician reviewed plaintiff's medical records and concluded that "the exams that are present ... are either not sufficiently detailed or not close enough to [the date last insured] to permit formulation of an RFC ... ." [AR at 707-09.]

12, 2003, and May 24, 2008, and a 2010 VA medical statement reiterating the VA's finding of complete disability.  [AR at 20 (citing id.).]  Here, the ALJ assigned "less weight" to the VA's 2003 decision, 2009 decision, and 2010 medical statement because: (1) "[d]espite the VA decision, there is insufficient evidence after the amended alleged onset date and prior to the date last insured to establish medically determinable impairments," and (2) "the VA decision seemed to uncritically accept as true most, if not all, of what [plaintiff] reported, but as explained elsewhere in this decision, there exists [sic] good reasons for questioning the reliability of [plaintiff's] subjective complaints."  [AR at 20.]

On June 25, 2004, the VA issued a rating decision finding that, effective March 12, 2003, plaintiff was disabled by virtue of "cervical spine strain with spurring at C5-6"; "low back strain with degenerative changes"; patellofemoral pain syndrome in both knees; plantar fasciitis in both feet; "status-post fracture, left thumb"; "residual left thumb scar"; "ganglion cyst of the right wrist"; and tinnitus.  [AR at 713-22.]  The VA made its finding concerning each of these impairments based on service medical records "reveal[ing] evidence of ... diagnosis and treatment history," VA examinations, or both.  [See AR at 715-18.]  On July 13, 2009, the VA issued another rating decision granting plaintiff's "entitlement to individual unemployability" as of May 24, 2008, because it determined that he "is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."  In the same decision, the VA granted plaintiff's "basic eligibility to Dependents' Educational Assistance," stating that "the evidence shows [plaintiff] currently has a total service-connected disability, permanent in nature."  [AR at 164-66.]  Finally, a December 8, 2010, VA medical statement reiterated that the VA has found that plaintiff "has a service-connected disability which has been rated at 100% disabled due to a diagnosed disease or disorder which substantially impairs or interferes with mobility."  [AR at 723.]

As discussed supra, the ALJ's finding that "there is insufficient evidence after the amended alleged onset date and prior to the date last insured to establish medically determinable impairments" is not supported by substantial evidence, as the ALJ failed to give proper reasons for rejecting probative evidence in the record pre-dating May 24, 2008, and post-dating December 31, 2008.  Thus, this was not a "persuasive, specific, and valid reason[]" to assign "less weight"

to the VA's disability determination.  See McCartey, 298 F.3d at 1076.  Second, the ALJ's statement that "the VA decision seemed to uncritically accept as true most, if not all, of what [plaintiff] reported," mischaracterizes the VA rating decisions.  The June 25, 2004, rating decision individually evaluated each of plaintiff's alleged impairments, and specifically considered whether there were medical records from the period of plaintiff's military service, as well as any laboratory findings or VA examinations containing medical signs, that supported the finding of an impairment. [See, e.g., AR at 715 (finding that "diagnosis and treatment history beginning in February of 1993," "objective evidence of a slight limitation of motion with observed crepitus and muscle spasms," and x-rays "reveal[ing] spurring off of the dorsal endplate at C5-6" demonstrated an impairment of "cervical spine strain with spurring at C5-6"); AR at 717-18 (finding that a January 1993 medical record revealing "a complaint with treatment," and "a slight limitation of motion secondary to a mass on the dorsum of the wrist, which is slightly cystic," supported the existence of an impairment of "ganglion cyst of the right wrist").]  The ALJ's conclusion that the VA accepted plaintiff's allegations without question is further undercut by the VA's denial of plaintiff's disability claim on the basis of other impairments he alleged -- for which the VA found there was insufficient evidence of medical diagnosis, treatment, and objective findings.  [See, e.g., AR at 719-20 (denying plaintiff's allegation of disability based on headaches because plaintiff's service medical records did "not reveal a diagnosis or treatment history for a headache condition accept [sic] in association with [his] back condition," and a VA examiner opined that his headaches were "part of [his] service connection cervical spine condition"); AR at 720 (denying plaintiff's allegation of disability based on a lower abdominal condition because service medical records and a VA examination did not reflect any chronic condition or disease associated with lower abdominal pain); AR at 721 (denying his allegation of disability based on hypertension because he was not diagnosed with or treated for hypertension while in the service, and a VA examination reflected normal blood pressure readings).]  Further, that the July 13, 2009, VA rating decision does not contain analysis like that of the June 25, 2004, rating decision does not support the ALJ's conclusion, as the 2009 decision relied on an earlier VA disability determination to decide plaintiff's eligibility for certain programs. [See AR at 166 ("Rating decision of February 2, 2008, increased your total combined disability

13

evaluation to 80 percent based service connected disabilities of right upper extremity radiculopathy, cervical spine degenerative disc disease ... .").] Accordingly, the ALJ's statement that "the VA decision seemed to uncritically accept as true most, if not all, of what [plaintiff] reported" also was not a "persuasive, specific, and valid reason[]" to assign less weight to the VA's disability determination. See McCartey, 298 F.3d at 1076. Substantial evidence does not support the ALJ's third reason to conclude that plaintiff had no medically determinable impairment through his date last insured.[6][7]

/

/

/

/

/

/

/

_____

[6]    In his decision, the ALJ relied on plaintiff's testimony, as well as medical records reflecting injuries plaintiff sustained on multiple occasions after performing various activities, to find that plaintiff "has engaged in a somewhat normal level of daily activity and interaction," and that "the evidence reflects [that plaintiff is] a fairly active individual." [AR at 18.] An ALJ is required to consider the evidence as a whole. See Reddick, 157 F.3d at 722-23; Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975). As the ALJ's reevaluation of the medical signs and laboratory findings in the record on remand may impact on his evaluation of plaintiff's credibility, the ALJ is instructed on remand to also reevaluate plaintiff's credibility to the extent necessary. The Court also notes that the ALJ further stated that he found plaintiff's reported symptoms incredible because "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," and because "[plaintiff's] ability to participate in [the activities resulting in injury] undermined the credibility of [his] allegations of disabling functional limitations." [AR at 18.] To the extent the ALJ rejected plaintiff's testimony concerning the *severity* of his symptoms, however, the evaluation of whether a claimant's testimony concerning the severity of his symptoms is credible *follows* a determination that the claimant *has* a medically determinable impairment. See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

[7]    As the Court herein remands this action for the ALJ to reevaluate whether plaintiff had a medically determinable impairment prior to his date last insured, the Court will not reach plaintiff's contention that the ALJ erred by not finding that plaintiff had a "severe" impairment prior to December 31, 2008.

**VI.**

**REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate to properly evaluate all of the probative evidence in the record in determining whether plaintiff had a medically determinable impairment prior to his date last insured. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: April 4, 2013

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE